UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SUZANNE H.,

                         Plaintiff,

v.                                                        1:20-CV-0684
                                                                 (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

FREDERICK LAW OFFICES, PLLC           SARAH FREDERICK, ESQ.
  Counsel for Plaintiff
4467 S. Buffalo St.
Orchard Park, NY 14127

U.S. SOCIAL SECURITY ADMIN.             FERGUS KAISER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented, in accordance with a Standing Order, to proceed before the undersigned.  (Dkt. No. 22.)  The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.**       **RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1965. (T. 163.) She completed high school and four years of college. (T. 341.) Generally, Plaintiff's alleged disability consists of back problems, stroke, neuropathy, obesity, rheumatoid arthritis, depression and anxiety, high blood pressure, and insomnia. (T. 352.) Her amended alleged disability onset date is September 31, 2015. (T. 419.) Her date last insured is June 30, 2016. (T. 163.) Her past relevant work consists of secretary, front desk receptionist, and medical social worker. (T. 21, 341, 353.)

### B. Procedural History

On March 10, 2016, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 148.)[1] Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 20, 2018, Plaintiff appeared before the ALJ, Ellen Bush. (T. 55-103.) On February 19, 2019, ALJ Bush issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-30.) On April 7, 2020, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

---

[1] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. §§ 404.1520c, 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process). Here, Plaintiff filed her claim before March 27, 2017. Thus, the 2017 revisions apply to this case, except for those rules that state they apply only to applications/claims filed on or after March 27, 2017.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12-23.) First, the ALJ found Plaintiff met the insured status requirements through June 30, 2016 and Plaintiff had not engaged in substantial gainful activity since September 30, 2015. (T. 12.) Second, the ALJ found Plaintiff had the severe impairments of: degenerative disc disease of the cervical spine; status post lumbar L5 laminectomy; posterior lumbar interbody fusion; obesity; bilateral carpal tunnel syndrome; hypertensive cardiovascular disease; and history of asthma. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 16.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b); except:

> she can stand, walk, or sit for up to six hours each in an eight-hour workday; frequently balance; occasionally handle, climb ramps or stairs, stoop, kneel, crouch, or crawl, but can never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to extreme temperatures and moderate exposure to respiratory irritants. Lastly, she should also avoid working around vibration vibratory tools, unprotected heights, and machinery with external moving parts.

(T. 17.) Fifth, the ALJ determined Plaintiff capable of performing past relevant work as a medical social worker. (T. 21.) In the alternative, the ALJ determined, considering Plaintiff's age, education, work experience, and RFC, she had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy Plaintiff could perform. (T. 22.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes four arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ's determination that Plaintiff's mental impairments were not severe was not supported by substantial evidence.  (Dkt. No. 14 at 24-26.)  Second, Plaintiff argues the ALJ failed to assess Plaintiff' mental limitations in formulating her RFC.  (*Id*. at 26-28.)  Third, Plaintiff argues the ALJ erred in determining Plaintiff could perform past work as a social worker without making any specific findings regarding the job description and when it appears this was a composite job.  (*Id*. at 28-30.)  Fourth, and lastly, Plaintiff argues the ALJ committed legal error by failing to make sufficiently specific findings regarding Plaintiff's transferable skills prior to determining she could perform other skilled work.  (*Id*. at 30-31.)  Plaintiff also filed a reply in which she reiterated her original arguments.  (Dkt. No. 21.)

### B. Defendant's Arguments

In response, Defendant makes three   arguments.  First, Defendant argues the ALJ's step two determination was supported by substantial evidence.  (Dkt. No. 18 at 5-10.)  Second, Defendant argues the ALJ's RFC determination was supported by substantial evidence.  (*Id*. at 10-12.)  Third, Defendant argues the ALJ properly determined that Plaintiff could perform her past relevant work as a social worker.  (*Id*. at 12-14.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the

Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV. ANALYSIS

#### A. Step Two

Plaintiff argues the ALJ's application of the "special technique" at step two was not supported by substantial evidence because "there was no medical opinion in the record relevant to Plaintiff's performance in interacting with others or adapting or managing oneself, to support the ALJ's findings Plaintiff was not limited in these areas." (Dkt. No. 14 at 24.) Plaintiff further argues the ALJ's analysis of Plaintiff's ability to

interact with others and adapt or manage herself contained factual errors.  (*Id*. at 25.)  For the reasons outlined below, Plaintiff's arguments fail.

An ALJ's decision at step two that an impairment is not severe must be "supported by 'substantial evidence' in the record as a whole."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  A step two finding that a plaintiff's impairment "is non-severe is not supported by substantial evidence [when] the evidence on which it is based is inconsistent with evidence that [the plaintiff's impairment] significantly impaired her ability to do basic work activities."  *Parker-Grose v. Astrue*, 462 F. App'x 16, 17-18 (2d Cir. 2012).  On the other hand, "[a] step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe."  *Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-00991, 2018 WL 3751292, at *2 (W.D.N.Y. Aug. 7, 2018), *aff'd sub nom. Guerra v. Saul*, 778 F. App'x 75 (2d Cir. 2019).  Therefore, contrary to Plaintiff's assertion, the ALJ's step two determination is not fatally failed if made absent a medical opinion.  The ALJ's determination must be supported by evidence in the record as whole.

The ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments.  *See Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir. 2008).  The ALJ must rate the degree of functional limitations in the areas of: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  The ALJ will rate limitations on a five point scale: none, mild, moderate, marked, and extreme.  *Id*.  If the ALJ rates the degrees of plaintiff's limitation as "none" or "mild," the ALJ will generally conclude that plaintiff's

impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in plaintiff's ability to do basic work activities.  *Id*. §§ 404.1520a(d)(1), 416.920a(d)(1).

Here, the ALJ's step two determination was proper and supported by substantial evidence in the record.  The ALJ considered the four areas of mental functioning outlined in the special technique and found Plaintiff had, at most, mild limitations.  (T. 14-16.)  In the area of understanding, remembering, or applying information and the area of concentrating, persisting, or maintaining pace the ALJ determined Plaintiff had a mild limitations.  (T. 15.)  In the area of interacting with others and the area of adapting or managing oneself, the ALJ found Plaintiff had no limitations.  (*Id*.)

Although there was no medical opinion in the record specifically noting Plaintiff's performance in interacting with others or adapting or managing oneself, a medical opinion is not necessary for the ALJ to make a determination.  *See Ornelas-Sanchez v. Colvin*, 632 F. App'x 48, 49 (2d Cir. 2016) (the ALJ must rate the degree of functional limitation).  The ALJ's findings in the functional areas were proper and supported by substantial evidence.

In making her determination Plaintiff had no limitations in the area of interacting with others, the ALJ relied on evidence in the record illustrating Plaintiff was able to interact appropriately with health professionals and staff.  (T. 15.)  The ALJ also relied on the 2016 opinion of non-examining State agency medical consultant, T. Bruni, Ph.D. (*Id*.)  Dr. Bruni opined Plaintiff had a mild limitation in social functioning.  (T. 141, 156.) To be sure, Plaintiff testified she lost her last job due to a conflict between herself and an administrator over urine testing.  (T. 74.)  However, Plaintiff denied issues getting

along with others or authority figures.  (T. 371, 373.)  Therefore, the ALJ properly concluded Plaintiff had no limitations in the area of interacting with others and substantial evidence supports the ALJ's determination.

In making her determination Plaintiff had no limitation in the area of adapting or managing herself, the ALJ relied on evidence in the record as a whole.  (T. 15.)  The ALJ considered that treatment notations failed to contain concerns on behalf of clinicians relative to Plaintiff's ability to care for her own needs.  (*Id*.)  Indeed, the mental status evaluations from a provider during 2017 and 2018 consistently note Plaintiff was well-groomed, well nourished, dressed appropriately, fully oriented with no perceptual disorders, and aware of her surroundings, with no suicidal ideation.  (T. 1058, 1061, 1064, 1065-66, 1068, 1070, 1073, 1075, 1077, 1079, 1081, 1082-83, 1084-85, 1086-87, 1088-89, 1091, 1095).  The ALJ also concluded, although Plaintiff received emergency treatment due to suicidal thoughts, she reported such thoughts were due to smoking weed and taking her sister's prescription medications.  (*Id*.)  Indeed, on September 7, 2015, Plaintiff sought emergency room treatment due to "altered consciousness."  (T. 500.)  She reported to providers she smoked weed and took prescription medication, stating she was not trying to harm herself.  (*Id*.)  She was discharged the same day.  (*Id*.)  Therefore, the ALJ properly assessed Plaintiff's ability to function in the area of adapting or managing oneself and substantial evidence supports her determination.

Plaintiff faults the ALJ for citing to the medical opinion of Dr. Bruni.  (Dkt. No. 14 at 24.)  Plaintiff asserts Dr. Bruni's opinion was faulty because it tracked with previous regulations on the four functional areas, regulations which were amended in January 2017.  (*Id*.)  However, the regulations at issue 20 C.F.R. §§ 404.1520a and 416.920a,

govern the agency's assessment of medical evidence, not the form of the medical evidence. Indeed, it is evident from the decision, that the ALJ followed the amended regulations, and Plaintiff does not contend that the ALJ applied the wrong standard. Moreover, Dr. Bruni's opinion contained relevant medical information and the ALJ relied, in part, on that opinion in making her determination.

Although Plaintiff cites to evidence in the record which she asserts supports her argument of greater limitations, Plaintiff fails to show that no reasonable fact finder could have reached the ALJ's conclusion. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review). Here, the ALJ properly assessed the evidence in the record and her determination in the various areas of mental functioning was supported by substantial evidence. Overall, the ALJ properly determined Plaintiff's various mental impairments were non-severe at step two.

**B. RFC Determination**

Plaintiff argues the ALJ failed to consider the "cumulative impact" of Plaintiff's impairments in the RFC. (Dkt. No. 14 at 26-28.) Plaintiff argues, the ALJ's RFC analysis did not include any explicit discussion or evaluation of Plaintiff's psychiatric disorders, and the RFC likewise did not contain any limitations associated with these

impairments. (*Id*. at 27.) Specifically, Plaintiff argues the ALJ failed to provide limitations in the RFC based on her findings of mild limitations in the areas of understanding, remembering, and applying information and in concentrating, persisting and maintaining pace. (*Id*.) For the reasons outlined below, the ALJ's RFC determination was proper and supported by substantial evidence in the record.

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity." *Id*. §§ 404.1523, 416.923; *see Parker-Grose v. Astrue*, 462 F. App'x. 16 (2d Cir. 2012). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. *Id*. §§ 404.1512(c), 404.1527(e)(2), 404.1545(a), 404.1546(c), 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

To be sure, at step four of her analysis the ALJ did not specifically address Plaintiff's mental health impairments. (T. 16-21.) However, the ALJ stated in his step two analysis that his RFC assessment reflected the "degree of limitation [she] found" at step two. (T. 16.) As outlined above, if the ALJ rates the degrees of a plaintiff's limitation as "none" or "mild," the ALJ will generally conclude that plaintiff's impairment is not severe and there is no more than minimal limitation in plaintiff's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Additionally, the ALJ afforded "great weight" to the opinion of consultative examiner, Christina Ransom, Ph.D. (T. 14.) Dr. Ransom opined Plaintiff had no

11

difficulty following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintaining a simple regular schedule or learning simple new tasks.  (T. 691.)  She opined Plaintiff would have "mild" difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress.  (*Id*.)

The Second Circuit has held that up to moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); see *Whipple v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment).  Therefore, because moderate limitations would not automatically preclude basic work limitations, mild limitations would not preclude such work either.

While remand is necessary where an ALJ's RFC determination fails to account for greater-than-minimal limitations stemming from a plaintiff's non-severe impairments, here there was no evidence of record suggesting that any such limitations existed. *Cheryl S. v. Saul*, No. 20-CV-0378L, 2021 WL 1893474, at *2 (W.D.N.Y. May 11, 2021). Indeed, Plaintiff cites no evidence of greater limitations due to her mental impairments. Therefore, the ALJ did not err in formulating an RFC determination absent mental limitations where the ALJ properly determined at step two Plaintiff's mental impairments

were non-severe and caused only minimal limitations in various areas of mental functioning.

### C. Step Four and Past Relevant Work

Plaintiff argues the ALJ found her capable of performing past relevant work as a medical social worker; however, in making this finding the ALJ failed to identify the physical and mental capacity and duties the job entailed or make any other specific findings. (Dkt. No. 14 at 28-30.) For the reasons outlined below, the ALJ erred in her determination Plaintiff could perform her past relevant work as a medical social worker. However, as further explained, the ALJ's step four error was harmless because the ALJ proceeding to make a finding at step five that there were a significant number of jobs in the national economy Plaintiff could perform.

At step four, the ALJ "compare[s] [the] residual functional capacity assessment ... with the physical and mental demands of [the plaintiff's] past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). "Past relevant work" is "work that [plaintiff has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [plaintiff] to learn to do it." *Id*. §§ 404.1560(b)(1), 416.960(b)(1). If, based on that comparison, plaintiff is able to perform her past relevant work, the ALJ will find that the plaintiff is not disabled within the meaning of the Act. *Id*. §§ 404.1520(f), 416.920(f).

The inquiry at step four requires separate evaluations of the previous specific job and the job as it is generally performed. *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003); *see Abbott v. Colvin*, 596 F. App'x 21, 23 (2d Cir. 2015) ("[D]etermination of a claimant's ability to perform past relevant work requires, at the very least, 'a careful appraisal of (1) the individual's statements as to which past work requirements can no

longer be met and the reason(s) for his or her inability to meet those requirements; [and] (2) medical evidence establishing how the impairment limits [his or her] ability to meet the physical and mental requirements of the work.'"). Plaintiff has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally. *See Jock v. Harris,* 651 F.2d 133, 135 (2d Cir. 1981); *see also* SSR 82-62, 1982 WL 31386, at *3 (Past relevant work in the fourth stage of the inquiry includes "the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy."). When the ALJ finds that a plaintiff can perform her past relevant work, her decision must contain a specific finding of fact (1) as to plaintiff's RFC; (2) as to the physical and mental demands of the past relevant work; and (3) that plaintiff's RFC permits her to return to her past relevant work. *Sims v. Comm'r of Soc. Sec.,* No. 17-CV-798, 2019 WL 421483, at *3 (W.D.N.Y. Feb. 4, 2019).

At step four the ALJ determined Plaintiff could perform her past relevant work as a medical social worker (DOT 195.107-030) concluding Plaintiff performed the job within the last 15 years, the job lasted long enough for her to learn to do it, and the job was performed at the level of substantial gainful activity. (T. 21.) The ALJ stated she relied on the vocational expert testimony that Plaintiff retained the ability to perform the job of a medical social worker as generally performed in the national economy and as actually performed by Plaintiff. (*Id*.) The ALJ therefore concluded Plaintiff could perform the job of a medical social worker as generally performed in the national economy and as actually performed by Plaintiff. (T. 22.) The ALJ's evaluation of Plaintiff's past relevant work ends there. Although the ALJ determined Plaintiff's work as a social worker met the requirements of past relevant work under 20 C.F.R. §§ 404.1560(b)(1) and

416.960(b)(1), the ALJ failed to perform the required separate evaluations of the previous specific job and the job as it is generally performed.  *Jasinski,* 341 F.3d at 185.

To be sure, the ALJ's written decision contains no discussion or analysis of Plaintiff's past relevant work; however, Plaintiff "is the primary source for vocational documentation, and statements by [Plaintiff] regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work.  SSR 82-62.  During the hearing the ALJ inquired into Plaintiff's past relevant work.  Plaintiff testified she completed four years of "online college" in the area of "psychology, social worker."  (T. 65.)  The ALJ asked if Plaintiff completed "some kind of practicum" for social work.  (*Id*.)  Plaintiff responded that she did not complete a practicum, but she was "working as a social work at the time."  (*Id*.)  The ALJ inquired if Plaintiff was a licensed clinical social work in the state of Florida, where she was working at the time, and Plaintiff responded "yes."  (T. 66.)  Plaintiff argues, for the first time before this Court, that Florida requires licensed clinical social workers to have a master's degree and a significant number of post-graduate clinical hours to provide clinical services and therefore Plaintiff's past work could not qualify as a social worker.  (Dkt. No. 14 at 29.)  Plaintiff asserts it was therefore impossible to determine whether Plaintiff was qualified to perform the job and the ALJ committed reversible error in determining Plaintiff's past relevant work consisted of a social worker.  (*Id*.)

Plaintiff was represented by counsel at all stages of the application process, including at the hearing where she testified, she was a licensed clinical social worker.  (T. 49, 56, 172.)  At the hearing, the ALJ attempted to clarify the very concerns Plaintiff first alleges in her brief to this court, namely that her lack of additional experience

15

beyond a four-year online degree allowed for her to be a medical social worker. At no time during the hearing did Plaintiff's counsel question Plaintiff's responses to the ALJ's inquiries regarding her education and past relevant work. However, despite Plaintiff's statement at the hearing regarding her past relevant work and the ALJ's attempts to determine Plaintiff's past relevant work, there was no meaningful discussion at the hearing or in the written decision of the work as actually physically and mentally performed by Plaintiff. Therefore, the ALJ erred in her conclusion Plaintiff was capable of performing her past relevant work as a medical social worker. Although the ALJ erred in her step four determination, the error was harmless for the reason outlined below.

**D. Step Five**

Although the ALJ erroneously determined Plaintiff could perform her past relevant work at step four, the ALJ proceeded to make the alternative finding, that based on Plaintiff's RFC and vocational factors, there were a significant number of jobs in the national economy Plaintiff could perform. (T. 21-23.)[2]

At the hearing, the ALJ asked the vocational expert what other occupations Plaintiff could perform given her RFC and vocational factors. (T. 97-98.) The vocational expert testified that Plaintiff could perform the occupations of furniture rental clerk, light exertional level, SVP 2 (DOT 295.357-018), case aide, light exertional level, SVP 3 (DOT 195.367-010), and social service aide, light exertional level, SVP 6 (DOT

---

[2]   Vocational factors include age, education, and work experience. 20 C.F.R. §§ 404.1560(3)(c), 416.960(3)(c).

195.367-034).  (T. 98.)[3]  The ALJ remarked at the hearing that the skilled and semi-skilled work "appear to be directly related to [Plaintiff's] past work."  (T. 98.)  The vocational expert answered "correct."  (*Id.*)

To be sure, the occupations of case aide and social service aide were based, in part, on transferable skills acquired performing past relevant work as a medical social worker.  An individual has transferable skills when the skilled or semi-skilled job functions she has performed in her past relevant work can be used to meet the requirements of other work within her RFC.  *See* POMS DI 25015.017 (available at https://secure.ssa.gov/poms.nsf/lnx/0425015017).  Because the ALJ erred in determining Plaintiff's past relevant work, the ALJ therefore also erred in her determination Plaintiff acquired transferable skills performing that work.

However, one occupation provided by the vocational expert, furniture rental clerk, does not require transferable skills because the occupation is classified as unskilled.  *See* SSR 82-41 (transferability will be decisive in the conclusion of "disabled" or "not disabled" in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of "not disabled" may be based on the ability to do unskilled work).  Further, the occupation of furniture rental clerk has a significant number of jobs, 51,000, in the national economy.  (T. 23, 98); *Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 178 (W.D.N.Y. 2018) (finding 9,046 jobs a "significant number of jobs" existing in the national economy).

---

[3] Specific Vocational Preparation ("SVP") is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, App'x C.  Using the skill level definitions in 20 CFR §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.  SSR 00-4p (S.S.A. Dec. 4, 2000).

The ALJ posed an additional hypothetical to the vocational expert, limiting an individual with Plaintiff's RFC and the additional limitations to simple tasks with infrequent changes to tasks, no pace or production work, and no direct work with the general public.  (T. 100.)  The vocational expert testified that the occupations of "social service and case aid and social worker" would be precluded based on skill level.  (*Id*.)  The vocational expert further testified that the occupation of furniture rental clerk would be precluded based on interaction with the public.  (*Id*.)  The ALJ then inquired if an individual was limited to the light exertional level with occasional handling and the "mental limitations," as outlined above, would be able to perform any occupations, the vocational expert responded, "not with that combination."  (*Id*.)  Ultimately the ALJ concluded Plaintiff had no mental limitations, including no social limitations, which was supported by substantial evidence in the record. Based on the vocational expert testimony, an individual with Plaintiff's RFC, education, and limited to unskilled work, could perform the occupation of furniture rental clerk.  (T. 23, 100.)  Therefore, any error at step four would be harmless because Plaintiff could ultimately perform a significant number of jobs in the national economy.

Overall, although the ALJ erred in failing to provide a proper analysis of Plaintiff's past relevant work at step four, any error is harmless because the ALJ made the alternative determination that there were a significant number of unskilled jobs in the national economy Plaintiff could perform.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:		November 15, 2021

*[signature: Bill Carter]*
William B. Mitchell Carter
U.S. Magistrate Judge